UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF BIRMINGHAM FIREMEN'S AND
POLICEMEN'S SUPPLEMENTAL PENSION
SYSTEM, Individually and On Behalf of All
Others Similarly Situated,

                    Plaintiff,

       - against -

PLURALSIGHT, INC., AARON SKONNARD,
and JAMES BUDGE,

                 Defendants.

Case No. 1:19-cv-07563 (AKH)

**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF
MOTION TO TRANSFER VENUE
TO THE DISTRICT OF UTAH**

Ignacio E. Salceda, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-1000
isalceda@wsgr.com

Gregory L. Watts, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
gwatts@wsgr.com

*Counsel for Defendants Pluralsight, Inc.,
Aaron Skonnard and James Budge*

September 27, 2019

# Table of Contents

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.        THE DISTRICT OF UTAH IS A PROPER FORUM .................................................. 4

II.       THE INTEREST OF JUSTICE AND CONVENIENCE OF PARTIES AND
          WITNESSES STRONGLY FAVOR TRANSFER TO THE DISTRICT OF
          UTAH ........................................................................................................................ 5

          A.        Plaintiff's Choice of Forum Is Entitled to Little Weight in this Shareholder
                    Class Action ................................................................................................. 5

          B.        Locus of Operative Facts Favors Transfer ........................................................ 6

          C.        Convenience of Parties Favors Transfer ........................................................... 8

          D.        Convenience of Witnesses Favors Transfer ...................................................... 9

          E.        Location of Documents Favors Transfer ......................................................... 11

          F.        Availability of Process Is a Non-Factor .......................................................... 11

          G.        Familiarity with Applicable Law Is a Non-Factor .......................................... 11

          H.        Interest of Justice Favors Transfer ................................................................. 11

CONCLUSION ................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adair v. Microfield Graphics, Inc.*,
    No. 00 Civ. 0629 (MBM), 2000 WL 1716340 (S.D.N.Y. Nov. 16, 2000)...........................8, 9

*Ahrens v. CTI BioPharma Corp.*,
    No. 16 Civ. 1044, 2016 WL 2932170 (S.D.N.Y. May 19, 2016)........................................6, 7

*In re AtheroGenics Sec. Litig.*,
    No. 05 Civ. 00061, 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) ......................................1, 11

*Billing v. Commerce One, Inc.*,
    186 F. Supp. 2d 375 (S.D.N.Y. 2002).........................................................................5, 6, 11

*Cali v. E. Coast Aviation Servs. Ltd.*,
    178 F. Supp. 2d 276 (E.D.N.Y. 2001) .....................................................................................6

*In re CenturyLink Inc. Sec. Litig.*,
    No. 13 Civ. 03839, 2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) .........................................4

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
    No. 14-CV-3644 (VSB), 2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ...................... *passim*

*City of Pontiac Gen, Emps. Ret. Sys. v. Stryker Corp.*,
    No. 10 Civ. 376, 2010 WL 2035130 (S.D.N.Y. May 21, 2010)...........................................1, 6

*City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*,
    2013 WL 5656086 (S.D.N.Y. Oct. 9, 2013) .........................................................................12

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
    No. CV 17-4412 (SJF) (AKT), 2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) .......................1

*In re Connetics Sec. Litig.*,
    No. 06 Civ. 11496 (SWK), 2007 WL 1522614 (S.D.N.Y. May 23, 2007) ..............................1

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992)..............................................................................................4, 12

*Doshi v. Gen. Gable Corp.*,
    No. 13 Civ. 7409 (RA), No. 13 Civ. 8634 (RA), 2014 WL 12774226
    (S.D.N.Y. Feb. 5, 2014) ......................................................................................................12

*Erickson v. Corinthian Colls., Inc.*,
    No. 13 Civ. 4308 (PKC), 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013)...................................6

*Garity v. Tetraphase Pharms., Inc.*,
  No. 1:18-cv-06797 (ALC), 2019 WL 2314691 (S.D.N.Y. May 30, 2019) ...................5, 6, 12

*Greenwood Partners v. New Frontier Media*,
  No. 99 Civ. 9099, 2000 WL 278086 (S.D.N.Y. March 14, 2000)...........................................11

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
  418 F. Supp. 2d 164 (E.D.N.Y. 2006) ....................................................................1, 8, 9, 11

*Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb Inc.*,
  Nos. 06 Civ. 1942 (HB), 06 Civ. 2025 (HB), 06 Civ. 2659 (HB), 06 Civ. 2916
  (HB), 06 Civ. 2918 (HB), 06 Civ. 3106 (HB), 06 Civ. 3653 (HB),
  2006 WL 1524590 (S.D.N.Y. June 5, 2006) ..........................................................................7

*MBCP Peerlogic LLC v. Critical Path, Inc.*,
  No. 02 Civ. 3310 (SWK), 2002 WL 31729626 (S.D.N.Y. Dec. 5, 2002) .........................4, 12

*In re Nematron Corp. Sec. Litig.*,
  30 F. Supp. 2d 397 (S.D.N.Y. 1998)............................................................................ *passim*

*Shulof v. Westinghouse Elec. Corp.*,
  402 F. Supp. 1262 (S.D.N.Y. 1975)..........................................................................................5

*Steck v. Santander Consumer USA Holdings, Inc.*,
  No. 14-cv-6942, 2015 WL 3767445 (S.D.N.Y. June 17, 2015) .....................................8, 9, 10

*In re Stillwater Mining Co. Sec. Litig.*,
  No. 02 Civ. 2806 (DC), 2003 WL 21087953 (S.D.N.Y. May 12, 2003)..........................5, 7, 9

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. § 78a .......................................................................4

28 U.S.C. § 1404(a) ............................................................................................... *passim*

Defendants Pluralsight, Inc. ("Pluralsight" or "Company"), Aaron Skonnard, its Chief Executive Officer ("CEO"), and James Budge, its Chief Financial Officer ("CFO") (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Utah.

## INTRODUCTION

Defendants seek to transfer this action, and subsequently filed related actions, to the District of Utah, where the action could have—and should have—been brought at the outset. This is a putative federal securities class action brought by plaintiff City of Birmingham Firemen's and Policemen's Supplemental Pension System ("Plaintiff"), a resident of Alabama, against Pluralsight, a company headquartered outside Salt Lake City in Farmington, Utah, and its CEO and CFO, who work at the Utah headquarters and reside nearby. All of the Defendants are found in Utah, all of the alleged misstatements were issued from the Utah headquarters, and the underlying issues in this case—revenue and billings, financial projections, and the drafting of SEC filings—were handled mostly out of Utah. Not surprisingly, the vast majority of witnesses and documents will be found in Utah. Put simply, there is no real connection to the State of New York or this District. The transfer of securities class actions to the district where the issuer is headquartered is "routine" as a "practical matter." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006).[1] The Court should grant the motion and transfer the action to the District of Utah.

---

[1] *See also City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, No. CV 17-4412 (SJF) (AKT), 2019 WL 3997354, at *4 (E.D.N.Y. Aug. 23, 2019); *City of Pontiac Gen, Emps. Ret. Sys. v. Stryker Corp.*, No. 10 Civ. 376, 2010 WL 2035130, at *3 (S.D.N.Y. May 21, 2010); *In re Connetics Sec. Litig.*, No. 06 Civ. 11496 (SWK), 2007 WL 1522614, at *10 (S.D.N.Y. May 23, 2007); *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 00061, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006).

## BACKGROUND

***Pluralsight***.  Pluralsight is a leading provider of technology skill development solutions committed to closing the global technology skills gap through its cloud-based technology skills platform.  Hansen Decl., ¶ 5.  Pluralsight is headquartered in Farmington, Utah, Compl. ¶ 16, with a total of three offices in the Salt Lake City area commonly referred to as "Silicon Slopes," Hansen Decl., ¶ 6.    Pluralsight has announced plans to move into a new 350,000-square-foot office building and 30-acre corporate campus in nearby Draper, Utah in 2020.  *Id*.  Pluralsight currently has 1488 full-time employees worldwide; 1282 of those employees work and reside in the United States, and 884 of those employees work and reside in Utah.  *Id.*, ¶ 7.  Pluralsight currently has ten full-time employees in New York.  *Id*.  It has no offices in New York.  *Id*.  All U.S. employees work for Pluralsight, LLC, the Company's U.S. operating subsidiary.  *Id*.

Pluralsight's corporate headquarters in Utah is the primary locus of its corporate decisionmaking.  *Id*., ¶¶ 8-14.  Pluralsight's executive management team, including its CEO and CFO, all work at the Company's Utah headquarters and reside nearby.  *Id*., ¶¶ 8, 9.  No current or former member of Pluralsight's executive management team resides in New York.[2]  *Id*., ¶ 9.  The current heads of finance, sales, investor relations, and human resources all work out of the Company's Utah headquarters and reside nearby.  *Id*.  Financial and operational results, like billings and revenue, are calculated at the Utah headquarters.  *Id*., ¶ 11.  The Company's financial projections are generated and approved out of its Utah headquarters.  *Id.*, ¶ 12.  Indeed, all employees who worked on the Company's billings forecasts worked out of the Company's Utah offices and reside there.  *Id*.  Pluralsight's corporate disclosures and SEC filings are drafted,

---

[2] Pluralsight's former Chief Revenue Officer resided in New Jersey during this tenure with the Company but worked out of the Company's Utah headquarters and maintained an apartment nearby.  He currently still resides in New Jersey.  Hansen Decl., ¶ 9 n.1.

approved, and issued there, although one of the employees responsible for drafting press releases works in California. *Id.*, ¶ 10. The Company's primary sales recruiters work in Utah, Colorado and California, and salesforce training is conducted through a sales enablement team that operates out of the corporate headquarters in Utah.[3] *Id.*, ¶ 13. Indeed, the Complaint itself notes that Pluralsight has used the "Utah Brand" to "import[] talent from outside of Utah" and "bring[] that talent to Utah." Compl. ¶ 32.

***Plaintiff's Complaint***. Plaintiff filed this putative securities class action complaint ("Complaint" or "Compl.") on August 13, 2019. The Complaint challenges several statements made by Pluralsight in press releases and SEC filings and on telephone conference calls. The Complaint alleges that Defendants misrepresented "the Company's business outlook" and the "true state of the Company's business," Compl. ¶¶ 3, 13, 57, particularly as it relates to its salesforce and its ability to generate growth in billings, ¶¶ 3–4, 26, and achieve financial projections, ¶¶ 3–4, 70. Every press release, SEC filing or other public statement challenged in the Complaint issued from the Company's corporate headquarters in Farmington, Utah. Hansen Decl., ¶ 10. The Complaint alleges that Mr. Skonnard and Mr. Budge "should" have or "must" have known that problems with the salesforce were so severe that Pluralsight's financial projections had become unattainable, and that Mr. Skonnard and Mr. Budge knew this, in Plaintiff's words, through "internal corporate documents," "conversations . . . with other corporate officers and employees," management meetings, and "reports" available within the Company, Compl., ¶¶ 21, 70. Any such conservations would likely have taken place—and any such documents would likely be found—at the Company's corporate headquarters in Utah, where Mr. Skonnard and Mr. Budge work.

---

[3] The Company's current Head of Sales Enablement works remotely in New York and resides in New York. She joined the Company in January 2019. The individual who executed this function before that time worked out of the Company's Utah offices. Hansen Decl., ¶ 13 n.2.

Hansen Decl., ¶ 14.  The Complaint does not mention "New York" at all, except in the case caption and signature block.

## LEGAL STANDARD

The statute governing change of venue, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district [] where it might have been brought."  Absent consent,[4] a motion to transfer involves a two-part inquiry: "first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate."  *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, No. 14-CV-3644 (VSB), 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015).  Transfer determinations are made on a "case by case" basis with the touchstone being "notions of convenience and fairness."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).  The decision to transfer lies within the discretion of the court.  *See In re CenturyLink Inc. Sec. Litig.*, No. 13 Civ. 03839, 2014 WL 1089116, at *2 (S.D.N.Y. Mar. 18, 2014).

## ARGUMENT

### I.    THE DISTRICT OF UTAH IS A PROPER FORUM

The threshold question on this motion to transfer pursuant to section 1404(a) is whether this action could have been brought in the District of Utah.  It certainly could have.  Where a plaintiff alleges claims under the Securities Exchange Act of 1934, venue is available in any district "wherein the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78a.  Pluralsight's corporate headquarters are located in Utah, and both of the individual defendants

---

[4] Counsel for Defendants contacted counsel for Plaintiff on September 13, 2019 requesting Plaintiff's consent, but Plaintiff would not agree to transfer the case to the District of Utah.

work and live there.  Hansen Decl., ¶¶ 6, 8.  Venue is certainly proper in the District of Utah.  *See MBCP Peerlogic LLC v. Critical Path, Inc.*, No. 02 Civ. 3310 (SWK), 2002 WL 31729626, at *1 (S.D.N.Y. Dec. 5, 2002) (venue proper where corporation headquartered); *In re Stillwater Mining Co. Sec. Litig.*, No. 02 Civ. 2806 (DC), 2003 WL 21087953, at *3 (S.D.N.Y. May 12, 2003) (same).

## II.  THE INTEREST OF JUSTICE AND CONVENIENCE OF PARTIES AND WITNESSES STRONGLY FAVOR TRANSFER TO THE DISTRICT OF UTAH

Not only could this action have been bought in the District of Utah, it should have been brought there and it should proceed there.  The relevant factors in a section 1404(a) analysis are well-known: "(1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence, including documents; (7) the relative familiarity of the courts with the applicable law; (8) the interests of justice, including the interests of trial efficiency." *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002) (citation omitted).  Some factors are more significant than others.  Plaintiff's choice of forum is entitled to less weight in a putative shareholder class action.  The locus of operative facts and convenience of parties and witnesses are most important.  *See Dell*, 2015 WL 12659925, at *4.  Here, the totality of factors strongly points to the District of Utah as the appropriate forum.

### A.  Plaintiff's Choice of Forum Is Entitled to Little Weight in this Shareholder Class Action

"While it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions," *Shulof v. Westinghouse Elec. Corp.*, 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975), particularly when a plaintiff purports to represent a nationwide class of "geographically dispersed" investors, *Garity v. Tetraphase Pharms., Inc.*, No.

-5-

1:18-cv-06797 (ALC), 2019 WL 2314691, at *2-3 (S.D.N.Y. May 30, 2019).  Plaintiff's choice of

forum, therefore, carries "little weight" here.  *Id.*; *see also In re Nematron Corp. Sec. Litig.*, 30 F.

Supp. 2d 397, 405 (S.D.N.Y. 1998) ("less weight").  Indeed, Plaintiff is not a resident of New York

and has no connection to New York.[5]  This makes its "desire to litigate" in the District even "less

persuasive."  *Cali v. E. Coast Aviation Servs. Ltd.*, 178 F. Supp. 2d 276, 292, 295 (E.D.N.Y. 2001).

### B.    Locus of Operative Facts Favors Transfer

The locus of operative facts is a "primary factor" in determining a motion to transfer

pursuant to section 1404(a), *Billing*, 186 F. Supp. 2d at 377 (citations omitted).  In this case, Utah

is the locus of events, not New York.

In a securities lawsuit, "'[m]isrepresentations [ ] are deemed to 'occur' in the district where

they are transmitted or withheld," *Nematron*, 30 F. Supp. 2d at 404.  Here, every press release,

SEC filing or other public statement challenged in the Complaint issued from Farmington, Utah.

Hansen Decl., ¶ 10.  *See Erickson v. Corinthian Colls., Inc.*, No. 13 Civ. 4308 (PKC), 2013 WL

5493162, at *6 (S.D.N.Y. Oct. 1, 2013) ("locus of operative events in a securities action is where

the alleged misrepresentations were made"); *Stryker*, 2010 WL 2035130, at *2 (same).  As to

underlying issues surrounding billings and revenue, financial projections, salesforce hiring and

training, and corporate disclosures, most of these matters were handled out of the Company's Utah

headquarters.   Hansen Decl., ¶¶ 11-14.   The Company's Farmington, Utah headquarters is

therefore the locus of operative events in this case.  *See Ahrens v. CTI BioPharma Corp.*, No. 16

---

[5] The City of Birmingham Firemen's and Policemen's Supplemental Pension System is a creation of Alabama state law and is maintained by the City of Birmingham.  *See, e.g.*, Office of the Director of Finance, CITY OF BIRMINGHAM FIREMEN'S AND POLICEMEN'S SUPPLEMENTAL PENSION SYSTEM: ANNUAL FINANCIAL REPORT FOR THE YEAR ENDED JUNE 30, 2016, at 5, https://www.birminghamal.gov/wp-content/uploads/2017/08/Firemen-and-Policemen-Supplemental-Pension-System.pdf.  Indeed, the certification and authorization attached to the back of Plaintiff's Complaint was signed by an assistant city attorney.

Civ. 1044, 2016 WL 2932170, at *4 (S.D.N.Y. May 19, 2016) ("[B]ecause [the company] issued its SEC filings from Seattle, that city is the locus of the operative facts."); *Stillwater*, 2003 WL 21087953, at *3-4 (locus of operative facts in securities class action was where defendant's offices, officers, and employees were located).

Plaintiff suggests in the Complaint that this litigation has its locus in the Southern District of New York just because Pluralsight trades on NASDAQ, Compl. ¶ 8, but that does not establish New York as the locus of operative facts. If it did, "the SDNY would have even more business and every plaintiff that sued a NYSE [or NASDAQ] firm could nestle in right here at 500 Pearl Street." *Laborers Local 100 and 397 Pension Fund v. Bausch & Lomb Inc.*, Nos. 06 Civ. 1942 (HB), 06 Civ. 2025 (HB), 06 Civ. 2659 (HB), 06 Civ. 2916 (HB), 06 Civ. 2918 (HB), 06 Civ. 3106 (HB), 06 Civ. 3653 (HB), 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006).

Plaintiff also suggests that this litigation has its locus in this District because some unspecified amount of work was done here on the "preparation . . . of offering documents in connection with the [Company's] SPO [secondary public offering]." Compl. ¶ 8. Presumably Plaintiff is referring to the well-disclosed fact that Morgan Stanley & Co. LLC and J.P. Morgan Securities LLC acted as lead book-running managers for the Company's secondary public offering ("SPO"), with Plaintiff latching on to the fact that Morgan Stanley listed its New York address on the SPO prospectus. Hansen Decl., ¶ 16. But no factual details about New York involvement are alleged in the Complaint.[6] Compl. ¶¶ 1–79. Contrary to Plaintiff's assumption, most of the Morgan Stanley bankers who worked on the SPO were from its Northern California office in Menlo Park, California, and most of the J.P. Morgan bankers who worked on the SPO were from

---

[6] Indeed, the Complaint says little about the SPO, except that it took place seven months into the putative class period and the SPO materials repeated several statements that Plaintiff has challenged as false or misleading. Compl. ¶¶ 2–4, 8, 43–44, 50.

that firm's San Francisco, California office.  Hansen Decl., ¶ 16.  Indeed, J.P. Morgan listed its San Francisco address in connection with the SPO prospectus.  *Id*.  The Company's outside auditors during the purported class period worked out of offices in Utah, Colorado and California. *Id*., ¶ 15.  The preparation of the offering documents in connection with the SPO supports transfer to the District of Utah, or is at least a neutral fact in respect of transfer.

In any case, these facts do not pull the "center of gravity" of the case away from Utah, where the vast majority of relevant corporate events took place and all of the challenged statements issued.  *Steck v. Santander Consumer USA Holdings, Inc.*, No. 14-cv-6942, 2015 WL 3767445, at *4, 6-7 (S.D.N.Y. June 17, 2015) (that "certain aspects of the IPO . . . occurred" in New York was insufficient to shift center of gravity from Dallas to New York); *id.* at *5-6 ("far more likely that the pivotal decisions . . . were made at . . . [company] headquarters") (citation omitted).  Defendants do not need to show that every relevant action took place in Utah—just the "bulk" of them.  *Dell*, 2015 WL 12659925, at *7; *see also Hanger*, 418 F. Supp. 2d at 169, 171 (approving transfer; conceding that "some" alleged misrepresentations were made in New York but finding that they "pale[d] in magnitude" to those made in Florida); *Adair v. Microfield Graphics, Inc*., No. 00 Civ. 0629 (MBM), 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000) (rejecting as insufficient an argument that "some events took place in New York").  Here, the focus will be on Utah.

### C.    Convenience of Parties Favors Transfer

The convenience of the parties is a compelling factor in favor of transfer where, as here, all defendants are located in another district, because "trials in securities class actions focus almost entirely on defendants' conduct."  *Nematron*, 30 F. Supp. 2d at 402.  Here, Mr. Skonnard and Mr. Budge work and reside in the District of Utah, and Pluralsight is headquartered there.  Hansen Decl., ¶ 8.  "[L]engthy proceedings in New York" could "lead to some disruption to [] day-to-day

operations." *Dell*, 2015 WL 12659925, at *5; *see also Hanger*, 418 F. Supp. 2d at 169 ("real risk of disrupting company operations").  This weighs "heavily in favor of transfer." *Nematrom*, 30 F. Supp. 2d at 401, 406.

Plaintiff, by contrast, is a resident of Birmingham, Alabama with no connection to New York.  *See supra* n.5.  Where a plaintiff is not located in a forum, "its convenience is not a factor in determining whether [one forum] or [another] would be [] more convenient." *Dell*, 2015 WL 12659925, at *5; *Hanger*, 418 F. Supp. 2d at 169 (where not located in forum, plaintiff "cannot claim . . . the more convenient forum").  This is particularly true where, as here, a plaintiff purports to represent a nationwide class, which basically guarantees that "some (if not most) of the plaintiff class will be inconvenienced whether the case proceeds in New York or [Utah]." *Hanger*, 418 F. Supp. at 169.  Indeed, "the residence of a class representative is often a mere happenstance, which may be discounted by a court when weighing transfer factors." *Steck*, 2015 WL 3767445, at *9.  This factor favors transfer to Utah.

## D.    Convenience of Witnesses Favors Transfer

Convenience of the witnesses is also a critical factor.  It decisively favors transfer here.  In a securities fraud case, the key issues are the "accuracy of [] statements and defendants' state of mind," *Microfield Graphics*, 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000), and the key witnesses are the officers and employees of the corporate defendant who participated in drafting and disseminating the allegedly false statements at issue," *Dell*, 2015 WL 12659925, at *4; *see also Steck*, 2015 WL 3767445, at *3 ("The principal witnesses [in a securities case] . . . will be the [] officers and employees who prepared for the [filings] and drafted and signed the [filings]."); *Stillwater*, 2003 WL 21087953, at *3-4 ("knowledge of [] officers and employees" is key).  This again favors Utah.

Here, all of the challenged statements were issued by Pluralsight from its Farmington, Utah headquarters.  Hansen Decl., ¶ 10.  Utah is where defendants Mr. Skonnard and Mr. Budge work and reside.  *Id*., ¶ 8.  Utah is where the entire current executive management team of the Company works and resides.  *Id*., ¶ 9.  Utah is where the current heads of finance, sales leadership, investor relations, and human resources work and reside.  *Id*.  Utah is where most of the employee witnesses who would testify as to the Company's financial projections and calculation of billings and revenue results, work and reside.  *Id*., ¶ 11.  Utah is where employee witnesses who would testify as to the Company's hiring and training of salespeople work and reside, outside of one employee in New York and a couple of sales recruiters in Colorado and California.  *Id*., ¶ 13.  And Utah is where employee witnesses who would testify as to the Company's public statements and disclosures work and reside, outside one employee who worked on press releases out of California.  *Id*., ¶ 10.  Indeed, Utah is where the vast majority of non-executive employees who might be witnesses on the topics alleged in the Complaint work and reside.

With respect to possible third-party witnesses, the Company's outside auditor during the purported class period, PricewaterhouseCoopers, worked out of that firm's Salt Lake City, Utah offices, and the individual PwC auditors that worked on the engagement are from the Utah, Colorado and Northern California offices of the firm.  *Id*., ¶ 15.  The lead underwriters of the Company's SPO, Morgan Stanley and J.P. Morgan, worked largely out of their Northern California offices in Menlo Park and San Francisco.  *Id*., ¶ 16.  While it is conceivable that there could be some discovery in New York related to the SPO, there is no doubt that New York will be, at best, a marginal source of witnesses compared to Utah.

In the end, Defendants do not need to show that every witness will be found in Utah, only that "more of the important [ones] reside" there.  *See Steck*, 2015 WL 3767445, at *5 (relevant

-10-

inquiry is where "the largest concentration of material witnesses will be"); *Greenwood Partners v. New Frontier Media*, No. 99 Civ. 9099, 2000 WL 278086, at *3, 5 (S.D.N.Y. March 14, 2000) (balancing the "many" and the "few").  This supports transfer to the District of Utah.

### E.    Location of Documents Favors Transfer

Securities litigation that survives dismissal "almost invariably involves production and review of a vast number of documents, almost all of which are in the defendants' possession." *Hanger*, 418 F. Supp. 2d at 170 (citation omitted).  Again, documents about billings or revenue, financial projections, hiring and training, and corporate disclosures and public statements are located at Pluralsight's headquarters in Utah.  Hansen Decl., ¶ 14.   Although not the most important factor in the section 1404(a) analysis, it still weighs in favor of transfer.  *See AtheroGenics*, 2006 WL 851708, at *17–18.

### F.    Availability of Process Is a Non-Factor

Courts can consider in the transfer analysis whether any non-party witnesses would be unwilling to testify if called.  *See Billing*, 186 F. Supp. 2d at 377.  Defendants are not currently aware of any such witnesses.  Hansen Decl., ¶ 17.  It is a non-factor.

### G.    Familiarity with Applicable Law Is a Non-Factor

Familiarity with applicable law "neither favors nor disfavors transfer," *Dell*, 2015 WL 12659925, at *6, because federal law governs, Compl. ¶¶ 6, 74, 79, and federal courts are assumed to be equally adept in applying it.  *See Nematron*, 30 F. Supp. 2d at 405.

### H.    Interest of Justice Favors Transfer

Transfer to the District of Utah is in the interest of justice.  As in *Dell*: "[T]his is a garden-variety federal securities fraud class action involving a named Plaintiff that has no particular connection to this District and Defendants who have moved to transfer this action to the District

in which the corporate Defendant is headquartered and where the bulk of the alleged wrongdoing occurred." 2015 WL 12655925, at *7. Here Plaintiff's choice of forum is entitled to minimal deference: most of the material events, most of the witnesses and documents, and all of the Defendants are located in the Utah. There is no real connection to New York. The action is in its "infancy," and transfer will not cause undue delay. *MBCP Peerlogic*, 2002 WL 31729626, at *6. Moreover, any slight delay would likely be offset by the fact that the District of Utah is substantially less congested than the Southern District of New York. *See* Federal Court Management Statistics, *United States District Courts – National Judicial Caseload Profile* (June 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019 .pdf (caseload of pending cases in District of Utah approximately two-thirds of caseload in Southern District); *see also Nematron*, 30 F. Supp. 2d at 406 (docket congestion relevant to analysis). Based on a balance of all of the material circumstances of the case and in light of the factors set forth above, the interests of justice and economy favor transfer to the District of Utah.[7]

## CONCLUSION

Defendants respectfully request that this Court transfer this action, and any subsequently filed related actions, to the District of Utah.

---

[7] Motions for appointment of lead plaintiff in this case are due on October 15, 2019, but the Court should grant the motion to transfer and leave lead-plaintiff determinations to the transferee court, as is customary. *See, e.g., Garity*, 2019 WL 2314691, at *5 (deferring question of lead plaintiff); *Doshi v. Gen. Gable Corp.*, No. 13 Civ. 7409 (RA), No. 13 Civ. 8634 (RA), 2014 WL 12774226, at *1 (S.D.N.Y. Feb. 5, 2014) (same); *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2013 WL 5656086, at *2 (S.D.N.Y. Oct. 9, 2013) (same). This makes sense. Should the Court agree that Utah is a more convenient forum than New York, it is best to defer long-term decisions about who should direct that litigation to the transferee court. The delay, if any, would be minimal, and considerations of convenience and fairness should always rule. *See Cuyahoga*, 980 F.2d at 117.

Dated:  September 27, 2019

Respectfully Submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Ignacio E. Salceda
Ignacio E. Salceda, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-1000
isalceda@wsgr.com

Gregory L. Watts, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
gwatts@wsgr.com

*Counsel for Defendants Pluralsight, Inc.,
Aaron Skonnard and James Budge*

-13-