**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF BIRMINGHAM FIREMEN'S AND POLICEMEN'S SUPPLEMENTAL PENSION SYSTEM, *Individually and On Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>PLURALSIGHT, INC., AARON SKONNARD, and JAMES BUDGE,<br><br>Defendants. | Case No. 1:19-cv-7563 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLURALSIGHT INSTITUTIONAL INVESTORS GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPOINTMENT OF LEAD COUNSEL**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

III.    ARGUMENT ............................................................................................................ 5

        A.      The Pluralsight Institutional Investors Group should be appointed as lead
                plaintiff.......................................................................................................... 5

                1.      Movant satisfies the procedural requirements for appointment as
                        lead plaintiff. ..................................................................................... 5

                2.      Movant is presumptively the most adequate plaintiff. ...................... 7

                3.      Movant otherwise satisfies the requirements of Rule 23. ................. 9

        B.      The Court should approve the Pluralsight Institutional Investor Group's
                choice of counsel......................................................................................... 11

V.      CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Fadem Tr. v. Citigroup Inc.*,
   239 F. Supp. 2d 344 (S.D.N.Y. 2002) ..................................................................................9

*In re Braskem S.A. Sec. Litig.*,
   No. 15-CV-5132 (PAE), 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015) ...............................11

*Chisholm v. TranSouth Fin. Corp.*,
   184 F.R.D. 556 (E.D. Va. 1999) ........................................................................................10

*In re Crayfish Co. Sec. Litig.*,
   No. 00-CV-6766 (DAB), 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 6,
   2002) ...................................................................................................................................9

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) ..............................................................................................10

*In re Elan Corp. Sec. Litig.*,
   No. 02-CV-865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3,
   2002) ...................................................................................................................................9

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ..........................................................................................8

*Fields v. Biomatrix, Inc.*,
   198 F.R.D. 451 (D.N.J. 2000) ...........................................................................................10

*Lang v. Tower Grp. Int'l, Ltd.*,
   No. 13-CV-5852 (AT), 2014 WL 12779212 (S.D.N.Y. June 17, 2014) ...............................7

*In re Millennial Media, Inc. Sec. Litig.*,
   87 F. Supp. 3d 563 (S.D.N.Y. 2015) ...................................................................................8

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................9, 10

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015) ...................................................................................7

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015) ...............................................................................8, 11

*Weltz v. Lee*,
   199 F.R.D 129 (S.D.N.Y. 2001) ......................................................................................9, 10

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................*Passim*

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................................*Passim*

H.R. Rep. No. 104-369 (1995).................................................................................................10

I.      **INTRODUCTION**

The Indiana Public Retirement System ("INPRS") and Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF," and collectively, the "Pluralsight Institutional Investors Group" or "Movant") respectfully move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, for entry of an Order: (i) appointing Movant as Lead Plaintiff on behalf of itself and all persons and entities other than Defendants[1] who purchased or otherwise acquired Pluralsight, Inc. ("Pluralsight" or the "Company") common stock between August 2, 2018 and July 31, 2019 (the "Class Period"), both dates inclusive; and (ii) appointing the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") to serve as Lead Counsel.

The PSRLA provides that the person or persons who file a motion within the prescribed PSLRA deadlines, possesses the largest financial interest in the case, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure should be appointed as lead plaintiff.

Under these standards, Movant, the Pluralsight Institutional Investors Group, should be appointed. The instant motion is timely, as it is filed within 60 days of the notice published pursuant to the PSLRA. The Pluralsight Institutional Investors Group suffered combined losses of approximately $2,349,965 as a result of the alleged misconduct, and is unaware at this time of

---

[1] Defendants are Pluralsight, Aaron Skonnard (Pluralsight's Co-Founder, Chief Executive Officer, and Chairman), and James Budge (Pluralsight's Chief Financial Officer). On September 27, 2019, Defendants filed a motion to transfer the instant case to the District of Utah. (Dkt. No. 17). Plaintiff City of Birmingham Firemen's and Policemen's Supplemental Pension System filed an opposition to Defendants' motion on October 11, 2019. (Dkt. No. 22). If appointed Lead Plaintiff, the Pluralsight Institutional Investors Group will promptly respond to Defendants' motion.

any other movant with a greater loss. Movant otherwise satisfies Rule 23. Thus, under Section 21D of the Exchange Act, Movant is presumptively the "most adequate plaintiff" and should be appointed as lead plaintiff because it has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Additionally, Movant's selection of Cohen Milstein as Lead Counsel should be approved. Cohen Milstein is highly qualified to prosecute securities class actions such as this one and has done so many times before.

## II.    BACKGROUND

Pluralsight provides software training courses on a subscription basis on a variety of technology-related subject areas, including cloud, mobile, security, information technology, and data issues. ¶ 2.[2] The company's primary measure of growth is its "billings" metric, defined as total revenue for a period plus the change in deferred revenue based on the subscription period. ¶ 26. Pluralsight stated in SEC filings that its uses billings "to measure and monitor our ability to provide our business with the working capital generated by upfront payments from our customers and our ability to sell subscriptions to our platform to both existing and new customers." ¶ 27.

The class period begins on August 2, 2018, the day after Pluralsight announced its second quarter 2018 financial results, reporting billings of $65.3 million. ¶ 28. Pluralsight highlighted growth in billings from its top 25 customers, leading to a "*strong and growing retention rate of 125%.*" *Id.*

Throughout the Class Period, Defendants touted their ability to maintain strong growth in billings by developing the Company's sales force. For instance, on August 29, 2018, at a

---

[2] Citations to the Complaint, *City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight, Inc.*, et al., No. 1:19-cv-07563 (S.D.N.Y.) (Dkt. No. 1), are abbreviated as " ¶ _."

Company meeting with analysts and investors, Defendant Budge stated that all of Pluralsight's sales representatives hired by the Company between 2016 and 2018 "are starting to become more tenured, we're getting more productivity out of them, which is why we don't have to double our sales force every single year. And you'll start to see that benefit pay off in the bottom line." ¶ 31. During the same meeting, Defendant Skonnard represented that Pluralsight was recruiting for its salesforce around the country and around the world, explaining: "we're having a lot of success . . . importing talent from outside of Utah, especially the talent that's seen bigger scale, that's done amazing things. And so we're very proactive about bringing that talent to Utah." ¶ 32.

Similarly, at a conference on January 16, 2019, Defendant Budge stated that "we had a lot of great sales reps. They're killing it. And a lot of great infrastructure around them that has improved our retention massively and we're now at scale, we're starting to see the efficiencies around that." ¶ 37. On February 13, 2019, during an earnings call discussing the Company's fourth quarter 2018 results, Defendant Skonnard again explained the Company's "emphasis" on its sales force as a key driver of new corporate billings, and Defendant Budge indicated that the Company currently had around 240 total "quota-bearing [sales] reps" with "more reps to come, more quota on the street and more goodness from them." ¶ 41.

Pluralsight's 2018 Form 10-K, filed on February 21, 2019, also emphasized that the Company had a "large direct sales force to focus on business sales" and that it had been able to "drive substantial increases in the productivity and effectiveness of our sales personnel over time as they gain more experience selling subscriptions to our platform." ¶ 42.

On March 4, 2019, Pluralsight filed a registration statement for a secondary offering ("SPO"). ¶ 43. The Company filed a prospectus on March 7, 2019 and announced an offering of

13,558,464 shares at $29.95 per share by Pluralsight insiders and related parties, who granted the underwriters a 30-day option to purchase an additional 2,033,770 shares. *Id.* The total gross proceeds were over $450 million; however, Pluralsight did not share in any of the over $450 million proceeds from the offering. *Id.* The prospectus noted that the Company had "significantly expanded our direct sales force to focus on business sales" and had "been able to drive substantial increases in the productivity and effectiveness of our sales personnel over time as they gain more experience selling subscriptions to our platform." ¶ 44.

On May 1, 2019, during an call concerning its first quarter 2019 earnings, Defendants again discussed its sales representatives. ¶ 45. Defendant Budge was positive about the pace of the Company's sales force expansion, explaining:

> We -- there's probably only so many reps we could hire in any given year. We do have a pace to it that between our people team and our sales management teams that puts people through good rigor on the kind of reps that we would like to hire into our organization. And we like the direction we're going on both a top and bottom line. ¶ 46.

He further stated that the Company was "still committed" to hiring and saw "a clear path to having 300-plus reps by the time we exit the year." *Id.* Budge continued: "[W]e like where we are with our sales reps. We're committed to continue to grow the sales force." *Id.*

But Pluralsight's sunny, public picture of the efficacy of its salesforce was materially misleading and failed to disclose material adverse facts, including that: (i) Pluralsight was experiencing sales execution challenges which impacted its billings; (ii) Pluralsight was experiencing substantial delays in hiring and properly training its salesforce that would be necessary to meet its lofty billing projections; (iii) Pluralsight was behind on the onboarding of new sales representatives which was causing sales execution issues and preventing the Company

- 4 -

from meeting its high growth projections; and (iv) as a result of the foregoing, Defendants'
public statements were materially false and/or misleading and/or lacked a reasonable basis. ¶ 49.

The truth was revealed on July 31, 2019, after trading closed. ¶ 50. Pluralsight announced
2Q 2019 financial results. *Id.* Year-over-year billings growth was just 23 percent, a significant
decline from the 40% growth in the previous year. *Id.* Pluralsight attributed the decline in billing
growth to "sales execution challenges." *Id.* The Company explained that the dramatic slowdown
was due to the fact that the Company had not hired or onboarded sufficient numbers of sales
representatives to maintain its growth, and had not adequately invested in "effective sales
enablement." ¶ 51. Pluralsight also announced that its Chief Revenue Officer was resigning. *Id.*
When trading opened on August 1, 2019, Pluralsight's stock price fell $12.13 per share in
response to this news, closing at $18.56. ¶ 53. Over the next two trading days, Pluralsight's share
price declined an additional 5%, closing at $17.64 per share on August 5, 2019. *Id.* In sum, as a
result of Defendants' false and misleading statements, and the precipitous decline in Pluralsight's
share price, the Pluralsight Institutional Investors and other Class members have suffered
significant losses and damages.

## III.   ARGUMENT

### A.   The Pluralsight Institutional Investors Group should be appointed as lead plaintiff.

As discussed below, Movant, the Pluralsight Institutional Investors Group, satisfies each
of the requirements of the PSLRA and is therefore qualified for appointment as lead plaintiff.
Additionally, Movant seeks appointment of Cohen Milstein as lead counsel.

#### 1.   Movant satisfies the procedural requirements for appointment as lead plaintiff.

The Exchange Act, 15 U.S.C. § 78u-4, establishes a procedure for the appointment of a
lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a

plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on August 13, 2019. *See* Decl. of Michael Eisenkraft in Support of the Pluralsight Institutional Investors Group's Motion for Appointment as Lead Plaintiff and Appointment of Lead Counsel ("Eisenkraft Decl."), Ex. 1.

The PSLRA further provides that within 60 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on October 15, 2019.[3] Movant has moved within the statutory 60-day time period. The motion contains the required certifications setting forth, inter alia, Movant's purchases of Pluralsight common stock, indicating that each member of the Pluralsight Institutional Investors Group has reviewed the relevant complaint, and is willing to serve as a representative party on behalf of the class. *See* Eisenkraft Decl., Exs. 2 & 4.

In addition, Movant has selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Cohen Milstein Sellers & Toll PLLC resume at Eisenkraft Decl., Ex. G. As demonstrated in its resume, Cohen Milstein has substantial experience in successfully prosecuting federal securities law claims.

---

[3] The sixty-day period expired on Saturday, October 12, 2019. October 15th is the next business day.

## 2.    Movant is presumptively the most adequate plaintiff.

The PSLRA sets forth procedures for the appointment of a lead plaintiff in class actions brought under the federal securities laws. 15 U.S.C. § 78u-4(a)(3). The PSLRA provides that the Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i).

The Court is guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the Complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Pluralsight Institutional Investors Group is well qualified for appointment as Lead Plaintiff. Its two members collectively suffered losses of approximately $2,349,965.27 from their purchases of Pluralsight securities during the Class Period as a result of Defendants' misrepresentations. *See* Eisenkraft Decl. Exs. 3 & 5. Movant is not aware of any other class member with a larger financial interest in the relief sought by the class and is therefore the most adequate plaintiff and entitled to appointment as Lead Plaintiff. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 277 (S.D.N.Y. 2015) (appointing as lead plaintiff the movant with the largest potential recoverable loss); *see also Lang v. Tower Grp. Int'l, Ltd.*, No. 13-CV-5852

(AT), 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014) (appointing group of plaintiffs with largest losses).

Moreover, as set forth in their Joint Declaration, attached as Exhibit F to the Eisenkraft Declaration, both members of the Pluralsight Institutional Investors Group are willing to actively participate in the leadership of this litigation. Both funds in the Pluralsight Institutional Investors Group are sophisticated institutional investors, which is "the type of investor Congress prefers as lead plaintiffs" in securities class actions. *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The fact that the PSLRA was designed to favor institutional investors should be taken into account when determining what constitutes a reasonable group of 'members.'").

Moreover, both members of the Pluralsight Institutional Investors Group have a large financial interest in this litigation, which shows that they are prepared to protect the interests of the Class. *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) (observing that lead plaintiff movant's substantial losses suggest its "strong interest in advocating on behalf of the Class"). Further, they have experience successfully leading securities cases. *See* Joint Decl. of Jeffrey M. Gill on Behalf of the Indiana Public Retirement System and Charles A. Burbridge on Behalf of the Public School Teachers' Pension and Retirement Fund of Chicago in Support of the Pluralsight Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Appointment of Lead Counsel ("Joint Decl."), Eisenkraft Decl., Ex. 6. The Pluralsight Institutional Investors Group members will work together to oversee their counsel and ensure the vigorous and efficient prosecution of this action. Finally, both Pluralsight Institutional Investors Group members understand their obligations as fiduciaries of the Class. *See* Joint Decl., Eisenkraft Decl., Ex. 6.

Because Movant possesses a significant interest in the outcome of this litigation, it is presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Further, Movant is both qualified to represent the Class and willing to serve as a representative party. Finally, Movant has selected counsel highly experienced in prosecuting securities class actions such as this one. Accordingly, Movant satisfies the requirements for appointment as Lead Plaintiff under the PSLRA and its motion should be granted.

### 3.    Movant otherwise satisfies the requirements of Rule 23.

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). *See also In re Elan Corp. Sec. Litig.*, No. 02-CV-865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Tr. v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).

Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00-CV-6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. June 6, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) and *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to

prove the defendants' liability.'" *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court has noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563-64 (E.D. Va. 1999) (internal citation omitted).

Here, Movant, the Pluralsight Institutional Investors Group, seeks the same relief and advances the same legal theories as all class members. Because the claims asserted by Movant are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," Movant meets the requirements of the typicality requirement of Rule 23.

The "adequacy" requirement of Rule 23(a)(4) is satisfied when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Here, Movant is clearly an adequate representative for the Class. First, as noted above, it is comprised of two sophisticated institutional investors, which are preferred under the PSLRA. *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.) ("The Conference Committee believes that increasing the role of institutional investors … will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

- 10 -

Moreover, Movant does not have interests adverse to those of the Class and purchased Pluralsight common stock during the Class Period. Like other putative class members, Movant suffered losses in the form of losses on its investment in Pluralsight common stock upon disclosure of the fraud. Furthermore, as a result of Movant's significant financial stake in this action, it will vigorously advocate on behalf of the class. Finally, Movant has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see* Eisenkraft Decl., Ex. 7, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

All of these factors demonstrate that Movant's claims are typical of the claims of the class within the meaning of Rule 23(a)(3), and that Movant will fairly and adequately represent the interests of the class under Rule 23(a)(4). Movant should therefore be appointed lead plaintiff.

**B.    The Court should approve the Pluralsight Institutional Investor Group's choice of counsel.**

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Court should approve Cohen Milstein as Movant's choice for Lead Counsel. Cohen Milstein has extensive experience in securities class action litigation as detailed in its firm resume. Eisenkraft Decl., Ex. 7; *see also In re Braskem S.A. Sec. Litig.*, No. 15-CV-5132 (PAE), 2015 WL 5244735, at *6 (S.D.N.Y. Sept. 8, 2015) (approving Cohen Milstein to serve as lead counsel on the basis of the firm's "experience litigating securities class actions"); *Topping*, 95 F. Supp. 3d at 624 (selecting Cohen Milstein as lead counsel because it "has successfully

prosecuted numerous securities fraud class actions"). Accordingly, the Court may be assured that the class will be well represented.

## V.    CONCLUSION

For the foregoing reasons, the Pluralsight Institutional Investor Group respectfully requests appointment as Lead Plaintiff and approval of its selection of Cohen Milstein as Lead Counsel.

Dated: October 15, 2019

By: */s/ Michael B. Eisenkraft*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Michael B. Eisenkraft (ME6974)
 (meisenkraft@cohenmilstein.com)
Alice Buttrick (5444120)
 (abuttrick@cohenmilstein.com)
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745

Carol V. Gilden
 (cgilden@cohenmilstein.com)
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369

Steven J. Toll
 (stoll@cohenmilstein.com)
1100 New York Ave NW Fifth Floor
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699

*Counsel for the Pluralsight Institutional Investors*
*Group and Proposed Lead Counsel for the Class*