# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF BIRMINGHAM FIREMEN'S AND POLICEMEN'S SUPPLEMENTAL PENSION SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PLURALSIGHT, INC., AARON SKONNARD, and JAMES BUDGE,<br><br>Defendants. | Civil Action No. 1:19-cv-07563<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
OF SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY FOR
APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

ARGUMENT .................................................................................................................................. 4

    A.    SEPTA Is the Most Adequate Plaintiff ............................................................................. 5

        1.    SEPTA Believes It Has The Largest Financial Interest In The Relief Sought By The Class ...................................................................................................................5

        2.    SEPTA Otherwise Satisfies The Requirements Of Rule 23 ...................................5

    B.    SEPTA Selected Well-Qualified Lead Counsel To Represent The Class ....................... 7

CONCLUSION ............................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Chilton v. Chiumento Grp.*, 365 F. App'x 298 (2d Cir. 2010) ........................................................ 5

*Stitt v. On Deck Capital, Inc.*,
   No. 15 Civ. 6126 (AT), 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ....................................... 6

**Statutes**

15 U.S.C. § 78 ............................................................................................................... 1, 4, 5, 7

17 C.F.R. § 240.10b-5 ......................................................................................................... 1

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995) ....................................................................................... 2, 7

S. Rep. No. 104-98 (1995) ......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 1, 2, 5, 6

Southeastern Pennsylvania Transportation Authority ("SEPTA") respectfully submits this memorandum of law in support of its motion (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

This securities class action alleges that Pluralsight, Inc. ("Pluralsight" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the action alleges that from August 2, 2018 through July 31, 2019 (the "Class Period"), Defendants touted the productivity and success of its salesforce, and that Pluralsight was securing a raft of new clients. In truth, the Company was experiencing substantial delays in hiring, training, and integrating a new, large salesforce which undermined the Company's sales strategy and led to lost business.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, SEPTA is the "most adequate plaintiff" by virtue of, among other things, the more than $115,000 in losses that it incurred on its

investments in over 8,900 shares of Pluralsight stock during the Class Period. SEPTA also satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class.

Indeed, SEPTA is more than adequate, it is precisely the type of sophisticated institutional investor that Congress intended to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369 at *34 (1995); S. Rep. No. 104-98 at *6 (1995). Responsible for managing roughly $1.4 billion in assets on behalf of approximately 14,000 participants, SEPTA has significant experience serving in a fiduciary capacity. Further, SEPTA fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action. *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. 1.

Further, SEPTA has selected BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, SEPTA respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant this motion.

## FACTUAL BACKGROUND

The complaint alleges that Pluralsight provides cloud-based and video training courses for employees such as software developers, IT administrators, and creative professionals. ¶2.[1] The Company utilizes a subscription-based business model known as "software as a service," whereby Pluralsight licenses its software on a subscription basis. ¶26. Pluralsight generates substantially all its revenue based on these subscriptions. *Id*. To drive growth, the Company relies on its sales force which sells subscriptions to business and enterprise users. *Id*.

---

[1] All citations to ¶__ refer to the complaint filed in *City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight. Inc*. 1:19-cv-07563, ECF No. 1 (S.D.N.Y.), unless otherwise indicated.

2

Throughout the Class Period, Defendants represented that Pluralsight was investing heavily in its sales force, that its sales representatives were increasing in productivity and efficiency, that the Company was successfully attracting new talent, and that Pluralsight's sales strategy was a success. ¶¶28-42. Specifically, Defendants stated that Pluralsight's sales representatives "are starting to become more tenured, we're getting more productivity out of them . . . And you'll start to see that benefit pay off in the bottom line." ¶31. Defendants further represented that Pluralsight's sales strategy "seems to be working. So we had a lot of great sales reps. They're killing it. And a lot of great infrastructure around them that has improved our retention massively and we're now at scale, we're starting to see the efficiencies around that." ¶37. Concerning Pluralsight's ability to recruit new sales reps, Defendants stated "we'll be able to keep attracting all the talent we need . . . And that work is really making a difference." ¶32. Defendants also stated that they "feel really good about our pipeline . . . There's a lot of deals that are sizeable." ¶29.

On March 6, 2019, the Company sold 15.6 million shares of its stock for gross proceeds of over $450 million through a secondary public offering ("SPO"). ¶2. The complaint alleges that "[t]he SPO served as a massive cash-out for Pluralsight insiders, as all the proceeds went to Company insiders and related parties." *Id.* In the offering documents for the SPO, Pluralsight similarly represented that the Company had "significantly expanded our direct sales force to focus on business sales," and "[w]e have also been able to drive substantial increases in the productivity and effectiveness of our sales personnel over time as they gain more experience selling subscriptions to our platform." ¶44.

These statements were materially false and misleading. On July 31, 2019, Pluralsight disclosed that its billings growth plummeted from 40% to just 23% year-over-year because of

3

problems with the Company's sales force as well as sales execution challenges. ¶50. According to Pluralsight, "[s]imply put, … there were dozens of reps that we needed to bring on board at the end of last year, beginning into this year, so they would ramp and become fully productive in the second quarter. And there [were] for a number of reasons delays in bringing them on board until, … early to mid-second quarter." *Id.* The Company further stated that Pluralsight "hired over 100 new sales reps in the last 12 months, which may seem like a lot, but that was not enough capacity in the system to sustain our high growth expectations as we entered the year." ¶51. Pluralsight further disclosed on July 31 that its Chief Revenue Officer resigned. *Id.* On this news, the price of the Company's stock declined $12.13 per share, from $30.69 per share on July 31, 2019 to $18.56 per share on August 1, 2019, or roughly 40% in a single day. ¶53.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On August 13, 2019, Plaintiff City of Birmingham Firemen's and Policemen's Supplemental Pension System ("City of Birmingham") filed this case against Defendants. *See City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight, Inc*. 1:19-cv-07563, ECF No. 1 (S.D.N.Y.). On the same day, counsel for City of Birmingham published a notice on *Globe Newswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by October 15, 2019. *See* Bleichmar Decl. Ex. 2. Accordingly, SEPTA satisfies the PSLRA's 60-day requirement through the filing of this motion.

A.   **SEPTA Is The Most Adequate Plaintiff**

SEPTA respectfully submits that it is entitled to be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).

   1.   **SEPTA Believes It Has The Largest Financial Interest In The Relief Sought By The Class**

SEPTA should be appointed Lead Plaintiff because it believes it has the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As demonstrated herein, SEPTA incurred total losses of more than $115,000 on its investments in over 8,900 shares of Pluralsight stock during the Class Period.[2] To the best of SEPTA's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, SEPTA believes that it has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

   2.   **SEPTA Otherwise Satisfies The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, SEPTA otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant must make only "a preliminary showing" that

---

[2] SEPTA's PSLRA-required Certification is attached as Exhibit 1 to the Bleichmar Decl. submitted herewith. A chart setting forth calculations of SEPTA's financial interest is attached as Exhibit 3 to the Bleichmar Decl.

5

it satisfies the adequacy and typicality requirements of Rule 23. *Stitt v. On Deck Capital, Inc.*, No. 15 Civ. 6126 (AT), 2016 WL 889535, at *2 (S.D.N.Y. Feb. 17, 2016) (citation omitted). Here, SEPTA unquestionably satisfies both requirements.

SEPTA's claims are typical of the claims of other purchasers of Pluralsight stock. Typicality is satisfied when each Class member's claims "arise from the same course of events, and the other class members make similar legal arguments to prove liability." *Id.* Here, SEPTA's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, SEPTA: (1) purchased Pluralsight stock during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged as a result. *Id.* at *3 (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an artificially inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class"). As such, SEPTA is a typical Class representative.

SEPTA likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class' interests to be fairly and adequately represented, a Lead Plaintiff must not have interests that are antagonistic to the Class that it seeks to represent, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is capable and qualified to vigorously represent the interests of the Class. *See On Deck Capital*, 2016 WL 889535, at *2. SEPTA satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims. SEPTA's interests are perfectly aligned with those of the other Class members and are not

antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between SEPTA and other Class members.

Indeed, SEPTA—responsible for overseeing approximately $1.4 billion in assets on behalf of more than 14,000 participants—is precisely the type of sophisticated institutional investor that Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N, 730, 733 (1995) ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). SEPTA is well suited to fulfill this Congressional intent and is more than adequate to lead this case.

Further, SEPTA has demonstrated its adequacy through its selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

**B.**     **SEPTA Selected Well-Qualified Lead Counsel To Represent The Class**

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). SEPTA has selected BFA to serve as Lead Counsel in this case.

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of institutional investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Bleichmar Decl. Ex. 4. In this District, the firm recently achieved a $234 million resolution for the benefit of the class in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866 (S.D.N.Y. July 15, 2016), as well as a $120 million recovery in

7

*Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121 (S.D.N.Y. Nov. 4, 2015). BFA also recently secured a $219 million resolution in *In re Genworth Fin. Inc. Sec. Litig.*, 14-cv-00682 (E.D. Va. Sept. 26, 2016), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve SEPTA's selection of BFA as Lead Counsel for the Class.

## CONCLUSION

For the reasons discussed above, SEPTA respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of BFA as Lead Counsel for the Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: October 15, 2019                                            Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Ross Shikowitz
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff SEPTA, and Proposed Lead Counsel for the Class*